May it please the court. Good morning. My name is Doug Erickson. I represent the appellant, Jack Ward, in this case. This appeal currently boils down to two relatively straightforward issues. The first issue, I think, is whether there's been an adequate showing of futility by Mr. Ward with respect to the exhaustion of remedies doctrine. And what I would tell the court is that the answer to that question is absolutely yes. There are a couple of reasons, of course, that the court employs that doctrine to have certain claims heard by administrative agencies whose determinations are at issue. One of those reasons is to develop a factual record with respect to the claim. In this particular case, I would suggest to the court that the factual record, as it is relevant to the question before the court, is perfectly well developed. And that's primarily because the issue that Mr. Ward raised below was almost purely a question of law. It was based on the court's order itself, which, of course, this court and the court below had before it. The other reason, the other primary reason for the- On the factual portion. I beg your pardon? On the factual question, was, and I'm not sure this relates to exhaustion, but was there any finding or any indication that he couldn't pay this money immediately if he had actually been forced to do that? Well, Judge, what you're asking about is an issue that relates to the original trial court's findings. I did not have that record available to me, and I do not know the answer to that question. It appears to me from the sentencing order that the trial judge did not consider that question because, of course, he's required to take into account a number of those factors, including that one, and there's no reference in the sentencing order or anything else in the record for this case that I've seen that would indicate that the trial judge did that. You know, based on some other things we know about Mr. Ward, I think it's unlikely that he was going to pay a restitution award in the amount of- I think everyone would agree it's unlikely, but I just wondered if there was anything in the record on that. Not to my knowledge, Your Honor. Could I ask another question about exhaustion? You indicated that this was a legal matter, so you don't need to exhaust it. When this exhaustion requirement was started by the Senate and we finally got the states to go along with it, the idea was more than just who was best. It was that we wouldn't allow any cases in the federal court if they would employ some type of a system. So it had nothing to do with who's the best to make the decision. It was trying to get a screening program going in the courts. So it seems to me that it's a little hard to say that we really meant that, but if it's a legal question, we're going to cross our fingers and go ahead and decide it. I'm not keen about this, because I'd like to go ahead and exhaust, but I just wanted your view. I'd hate to have the Supreme Court come back and say, didn't you understand why we have exhaustion? Certainly, Your Honor. My point simply was that of the two primary reasons for this doctrine, one being the development of a factual record, that's not terribly important in this case. Yeah. But the other one, the other one, that we committed ourselves that we would not let anybody into our courthouse until they went through the exhaustion, that was a part and parcel of it. I don't know how to handle that. Well, and that's where we get to the second prong, which is really the purely futility aspect. You know, we allow the administrative agency, in this case the Bureau of Prisons, to correct an error that supposedly they made below before this court or the court below will entertain that. I think that's the proper one. We have to get to that. And it strikes me that it's an odd way of getting to it, and you can respond to this,  He just has to resign from the IRFP work, and automatically he's out. He solves his own problem. I'm not sure what we exhaust. Well, what we exhaust, or what he failed to exhaust, was simply his issue from the very beginning was simply that there was not a lawful order imposing restitution, and therefore the Bureau of Prisons, through whatever measure, whatever program, could not collect restitution from him. But the point is that he could stop it himself. Well, he could stop working. There's no question about that. That was it. Because it comes up because he volunteers to do work, which he doesn't have to do. So he's in a position to help himself. So what's to exhaust? Well, I think the question to exhaust, I mean, the issue below is whether there was a lawful order imposing restitution. Now, he had an avenue where he could have pursued that claim up through the Bureau of Prisons. In this case, Mr. Ward's a little bit hamstrung because he went back to the district. He filed the first step in the administrative claim process. He went back to the district court asking to modify that original order that he was challenging. The sentencing court actually agreed with Mr. Ward, and I think it's interesting for this court to look at, because Mr. Ward had the wisdom to make this part of the record before I was appointed. And it's at docket number 16 of this court's docket, and I believe it's exhibit A, which is the order where the sentencing court actually said, and I think this is ultimately the conclusion that this court should reach as well. The sentencing court said, It is now apparent to the court that the usual form of imposition of restitution in this district constitutes an impermissible delegation of authority to either BOP or probation. Once Mr. Ward, according to his filings, received that order of relief from the district court, he had no reason to pursue his administrative grievance any further. But when the judge changed his mind and said exhaustion, why didn't he reinstate his original claim? I don't believe that the sentencing court actually reached that conclusion. I believe the government filed a motion for reconsidering, challenging the court's jurisdiction, and the court, upon reflection, decided that it, in fact, did not have jurisdiction. Right. You're right. That's right. But he knew there was no longer in place an order of the district court of the sentencing judge. And, Judge, I apologize. I don't have any information as to what his thought process was, or as it reflected anywhere in the record, to my knowledge, as to why he did not, or whether he could have reinstated his claim at that point. I have a question on the futility point. The government appears to me to concede. I'm just going to read this very brief. To the extent petitioner's attempts at exhausting his administrative remedies would be futile, they are only futile because petitioner's claim is meritless, not because the BOP had adopted a clear and inflexible policy regarding the MVRA, but because the sentencing report did not delegate its authority to set a restitution schedule to BOP and so on. Do you view that as being a concession of futility? It's a little further down in my outline, Judge, but yes, absolutely I do. Now, the government has tried to retract or recast that statement as an inartful argument below, but I think that's absolutely correct. The government's ---- But in effect, what the retraction seems to be is kind of more of the same. It's futile because it's meritless. Is that a futility argument? Should it be successful from your perspective? I think so. The government is saying that Mr. Ward's claim would not have been approved. It would not have been successful no matter what he had done. So I think your point is well taken. It's absolutely ---- Do you want to save any time? It doesn't matter to me, but it's ---- I probably should, Judge. I have about a minute and 40 seconds left. Right. In the meantime, you might think about my first question when you get back is Lamoni. I'd like to have you talk to me about the Lamoni case. Yes, sir. I will. Very good. Let's hear it from the government. May it please the Court, my name is Carla Hodes-DeLore. I'm an assistant U.S. attorney representing the respondent in this matter. The district court did not err in denying the habeas petition because the petitioner did not exhaust his remedies, and even if this court were to get past the exhaustion, his claim is meritless. It's clear no one is disputing the fact that the district ---- Let me just ask you right off the bat because it kind of dovetails on what we just talked about. Is the government's position that the claim is meritless in a way a confirmation of the futility argument? In other words, if it is irrevocably meritless, what's the point of doing it? I was responsible for making that statement in the brief, and I do admit that I should not have posed it the way I did. Okay, well, let's say that didn't exist. You're now making the argument that this claim is just absolutely meritless. Isn't that the definition of futility? No matter what he did, no matter what he said, he couldn't get relief. Well, the thing is, but to sit there and say if a claim is meritless and he bypasses exhaustion, he doesn't have to do it, that completely undercuts the whole reason for exhaustion. It's a different issue then, right? Right. He still needs to go through the steps because things could be changing along the way. His facts could change. The policy could change. He still needs to exhaust along the way, and he didn't. So the district court correctly decided that his failure to exhaust is the main reason why his petition should be denied. With regard to the actual merits, if this court were to get past the exhaustion claim, which the government does not believe it should, but if it were, the district court did not err in denying the petition because the sentencing court did not improperly delegate its restitution schedule to the Bureau of Prisons, nor did it force the petitioner to participate in the inmate financial responsibility program. The court's restitution order merely stated that the restitution was due immediately. It never said a repayment schedule, though, did it? That was its schedule. It's due immediately. That was an impossibility, I think, at least the inference is, from both from what was known about the defendant and also what the sentencing judge himself said when he said this was an improper way of doing things in his initial reconsideration of the matter, that he didn't have any expectation whatsoever that this guy could pay the stuff immediately. I do not have before. I have been unable to. This case originated in Eastern District of California, and I do not have the sentencing transcript from what occurred at sentencing. All I have is the judgment from the Eastern District of California. But what I can say to that is based on what we have. Wasn't there a decision by the district judge in California on petitioner's initial application saying this was an improper sentence because we have this policy here of saying immediately, and that's not a proper policy, and I made a mistake, and other judges in my district have been making a mistake? So isn't that implicit in that is the fact that he didn't think he was setting a schedule at all? Well, what I can say is this, is trial judges are presumed to know the law and to carry it out when they're doing their sentencing. And according to the. . . He, in fact, said that wasn't what he was doing. How could he have made the decision he made on the first go-round if that's what he thought? Well, I don't know if I'm answering your question correctly, but let me. . . Maybe this will explain it. Okay. Under the Mandatory Victims Restitution Act, the court has to order the restitution to each victim for all the losses they suffer without regard to the defendant's economic circumstances. Once that amount of restitution is determined, the MVRA requires the court to. . . And quote. . . the projected earnings and income of the defendant and any financial obligations of the defendant and his dependents. And that's section 3664F2. So assuming or presuming the judges know and follow the law. . . No, no, no. But here we have, if that had been what the judge had done, if the judge had said, oh, yes, I've considered all this and I know he can pay all this immediately, which frankly seems extremely doubtful, then he would never have granted, as he did, the initial application to vacate the sentence as improper. Right. And that was . . . the government believes that that was error for him to do that, that he mistakenly believed that by saying do immediately, he was implicitly delegating the scheduling to the Bureau of Prisons, but in fact he was not. He could only have believed that he was doing that implicitly if he had in his mind recognized that he had never made the finding that this guy could pay it all immediately. Well, then I guess in that situation, if the defendant wasn't able to pay immediately, the defendant should have objected at the time the court set the restitution order and said it's due immediately. At that point, the defendant should have objected and said, I cannot pay immediately. You need to set a restitution schedule. Instead, what happened is he was sentenced. Six months later, he voluntarily signed up for the IFRP and he made payments, and in fact he made payments for three and a half years. After three and a half years of making payments, he filed a motion for deferral or reduction in payments stating, I've now joined Unicor, the federal prison work system, and they are now taking 50% of my pay wages. At that point, he said, please reduce or defer my payments, and he never claimed at that point that the court lacked the authority that it improperly delegated its scheduling to BOP. It was six months later when he filed his second and third motions for deferral that that's the first time he ever made that claim. So you're saying, in effect, he's a stop from making an argument under Lemoine and Gunning? Well, I think it's disingenuous for him to be participating for three and a half years and now to come back and all of a sudden be claimed. The guy's a prisoner. He's not a lawyer. Right. But, you know, he could have objected right away when the court set the restitution schedule, as defendants have in other cases. How do you get around Lemoine and Gunning? Doesn't that say that the district court, contrary to our ruling in the Ninth This case is distinguishable from Gunning in one key respect, and that is that in Gunning the court ordered payment due immediately pursuant to the IFRP, and that is not what happened in this case. In this case the court just said it's due immediately. The fact that in Gunning it delegated it saying you have to pay it pursuant to the IFRP, that's what this court found was improper, and that's not what happened here. By just saying it's due immediately, the district court hasn't delegated or the sentencing court hasn't delegated anything to the Bureau of Prisons. And, in fact, the Bureau of Prisons, unless the defendant voluntarily enters into the IFRP, the Bureau of Prisons is not allowed to take any money out for restitution payments. Haven't we already decided this in Martin, in our circuit? Exactly. Well, yes. It wasn't exactly. This Court has decided it and said payments that are restitution or that says due immediately is perfectly fine, and, in fact, yeah, so it's under 3572, they say pay immediately is a general rule. So based on Martin is another reason why the district court didn't err in denying the habeas petition. If we were going to reverse this, it seemed to me we'd have to distinguish Martin or Goen Bank. Right. But there's no reason to distinguish Martin from the case at hand. Thank you. If there's no further questions, we ask that the government affirm the district court's denial of the habeas petition. Thank you. Thank you very much. And we'll have rebuttal. Thank you, and thank you, Judge Wallace, for bringing us back to Lemoyne, which I think is a very helpful case to this Court. It is not controlling. And before I forget, let me distinguish Martin for the Court. As far as I can tell from having read that decision a couple of times, the issue of improper delegation to the BOP was not an issue that was actually decided in Martin. But Lemoyne is particularly important. It's not controlling in this case because the district court in Lemoyne did exactly what it was supposed to do. It set a schedule. You went by Martin a little too quickly. I didn't see that in Martin. Which part in Martin? The distinction. Well, Judge, I don't see where the Court answers the question as to whether there was an improper delegation. The district court did not abuse its discretion by ordering restitution payable immediately. Restitution is mandatory in the case regardless of defendant's ability to pay, and it cites Section 3664. And we went on to say immediate repayment is the general rule. A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately unless, in the interest of justice, the court requires otherwise and cites the section. I don't see how that's distinguishable. I think it's perfectly within the Court's power to order restitution immediately. But the Court did not go to the next step, which is answering whether that was an improper delegation under the facts of that case to the Bureau of Prisons. The Court said in Martin, quote. Go ahead. But I don't see that distinction in Martin. Go ahead. Well, the Court said that, quote, The Court had before it information regarding defendant's financial resources that it presumably considered and found insufficient to warrant periodic payments. So in Martin, the Court of Appeals said there was a factual basis for ordering immediate payments, even if it wasn't articulated on the record. Here we have nothing like that as far as we know, though we don't have the sentencing. That would be another distinction, Judge. And let me just wrap up by saying one thing, because it pertains to the Lemoyne case, which Judge Wallace had asked about. This Court has already recognized in Lemoyne the rule that should be controlling in this circuit, and that is in footnote 4, where it cites to the Second Circuit and the Eleventh Circuit. Both of those courts have concluded that when restitution cannot be paid immediately, the sentencing court must set a schedule of payments for the terms of incarceration, supervised release, or probation. That's the Second Circuit and the Ninth Circuit case, which I think both parties discussed, the Prouty case. A sentencing court may not order immediate repayment where the funds are unavailable because it implicitly delegates the authority to schedule repayment to the probation department or, in this case, the Bureau of Prisons. So I think the rule that the Court should adopt in this case in reversing is recognized in Lemoyne. It just hasn't been clearly articulated in the Ninth Circuit. Very good. Thank you very much. Thanks, you both, for your argument. The case of Ward v. Chavez is submitted.
judges: Rakoff, Wallace, Smith